UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT FORD, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 10-11202-JCB |
| v. ) | |
| ) | |
| HAROLD CLARKE, VERONICA ) | |
| MADDEN, PAUL DIAPOLO, LUIS ) | |
| SPENCER, and CHRIS MITCHELL ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
[Docket No. 37]

August 25, 2011

Boal, M.J.

Plaintiffs Albert Ford, Jr., Christopher Santos, Joel Vasquez, Domingos Coelho, Carlos Irizarry, and Aurelio Duclerc bring this action pro se against former Commissioner of Corrections Harold Clarke and four members of the Religious Services Review Committee at Massachusetts Correctional Institute-Cedar Junction ("MCI-Cedar Junction"). Plaintiffs seek money damages as well as declaratory and injunctive relief, in connection with Defendants' alleged interference with Plaintiffs' practice of Kingism, the religious doctrine of the Almighty Latin King Queen Nation ("ALKQN").

The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge for all purposes. [Docket Nos. 31, 42]. The matter is presently before the Court on

-1-

Defendants' motion to dismiss the complaint. [Docket No. 37]. Because Plaintiffs have not exhausted their claims as required by the Prison Litigation Reform Act, this Court grants Defendants' motion and dismisses the complaint without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

I.  Allegations in the Complaint

   A.  The Parties

Plaintiffs are prisoners in the custody of the Massachusetts Department of Corrections ("MDOC") and are allegedly adherents of Kingism. Complaint, p. 4. At the time of the filing of the complaint, Defendant Clarke was the Commissioner of Corrections for the MDOC and was responsible for the administration of all Massachusetts correctional facilities. Complaint, p. 4. Defendants Spencer, DiPaolo, Madden and Mitchell are/were members of the Religious Services Review Committee ("RSRC") at MCI-Cedar Junction. Complaint, p. 4.

   B.  Kingism

Kingism allegedly started in the 1960s as the doctrine of the ALKQN. Complaint, ¶ 3. The King Manifesto-Constitution ("Km/C") outlines the religion of Kingism and contains writings inspired by the founders of Kingism and ethical teachings. Complaint, ¶¶ 3-4. Plaintiffs believe that Kingism requires study of the Km/C and prayer worship services once a week. Complaint, ¶ 9. Plaintiffs require the Km/C, prayer oil, prayer beads, and a place for worship and study in order to practice their religion. Complaint, ¶ 14.

Kingism has two holy days. Complaint, ¶ 10. The first holiday is "Kings Holyday" that takes place on January 6 and is dedicated to members that have passed away. Id. Kings Holyday is observed by fasting until sundown. Id. The second holiday is "Kings Week," which

takes place the first week of March.  Id.  Kings Week is a week long anniversary that ends with a "Turkey Feast Dinner."  Id.

        C.      The Complaint

On or about July 12, 2010, Plaintiffs filed their complaint alleging violations of (1) 42 U.S.C. § 1983; (2) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000-cc; (3) Article 2 of the Massachusetts Constitution; and (4) the U.S. Constitution through the First and Fourteenth Amendments.  Complaint, p. 2.  [Docket No. 1].  Specifically, Plaintiffs allege that Defendants have violated their rights by (1) denying Plaintiffs' requests to recognize Kingism as a religion, Complaint, ¶ 2; (2) not allowing them to study the Km/C, which contains writings, ethical teachings and directions as to how to practice Kingism, Complaint, ¶¶ 4, 14; (3) not allowing Plaintiffs to attend worship services once a week, Complaint, ¶ 9; (4) not allowing them to observe two Kingism holy days, Complaint, ¶ 10; (5) declaring Kingism as a security threat group, Complaint, ¶12; (6) not approving the use of prayer oil, prayer beads, and the Km/C for religious practices, Complaint, ¶ 14; and (7) not providing Plaintiffs with a place for worship and study, Complaint, ¶ 14.  Plaintiffs request that the Court order prison officials to recognize Kingism as a religion, allow the observance of Kingism holy days, provide each named plaintiff with $5,000 in monetary damages from each Defendant, and award punitive damages of $60,000.  Complaint, p. 10-11.

II.      Defendants' Motion to Dismiss

On December 22, 2011, Defendants moved to dismiss Plaintiffs' complaint.  [Docket No. 37].  The basis for Defendants' motion are: (1) Plaintiffs have not exhausted their administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997a(e); (2)

the Eleventh Amendment of the U.S. Constitution bars Plaintiffs' claims against Defendants in their official capacities, as well as bars claims under RLUIPA for monetary damages; (3) Plaintiffs have failed to allege sufficient facts or omissions to support their Section 1983 or RLUIPA claims; (4) Defendants are protected by the doctrine of qualified immunity; and (5) Plaintiffs' pendant state claims fail as a matter of law. See Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Def.'s Memo.") [Docket No. 41]; Defendants' Notice of Supplemental Authority [Docket No. 56]. Plaintiffs filed an opposition to Defendants' motion on March 11, 2011. [Docket No. 48].

III.     Exhaustion of Administrative Remedies

In their motion, Defendants assert that Plaintiffs have not exhausted their administrative remedies. In support, Defendants originally filed the December 13, 2010 affidavit of Christopher Mitchell, Director of Program Services and Reentry for the Massachusetts Department of Correction and Chairperson of the RSRC. Def.'s Memo, Ex. 1, Affidavit of Christopher Mitchell ("Mitchell Aff.") [Docket No. 41-1]. In his affidavit, Mr. Mitchell stated: "None of the six (6) plaintiffs in this civil action ... have ever submitted an inmate religious accommodation request to the RSRC regarding 'Kingism' or any other inmate religious accommodation request." Mitchell Aff., ¶ 18.

In their opposition dated March 11, 2011, Plaintiffs assert that they had filed grievances regarding their attempt to practice Kingism and attached the following documents: (1) February 15, 2010, Inmate Grievance Form (No. 45361) submitted by Christopher Santos (Ex. C); (2) March 12, 2010, Inmate Grievance Form (No. 45794) submitted by Joel Vasquez (Ex. C); (3) a November 14, 2009 handwritten letter from Plaintiff Ford to Veronica Madden, former

chairperson for the RSRC (Ex. D); and (4) February 2, 2010, Inmate Grievance Form (No. 45185) by Domingos Coelho (Ex. E-1). [Docket Nos. 48, 54].

On March 28, 2011, this Court issued an Electronic Order directing Defendants to file a reply memorandum (along with exhibits), that addressed, inter alia, Plaintiffs' assertion that they submitted grievance forms and a letter to the RSRC regarding their claims.

On April 12, 2011, Defendants filed a Memorandum, as well as the Affidavit of Katherine Gonzalez, Administrative Secretary to Veronica Madden. [Docket No. 50]. Neither the Memorandum nor the Affidavit, however, addressed the question whether there were any records of grievance forms or letters submitted by Plaintiffs to prison officials regarding the claims in the complaint. Ms. Gonzalez's Affidavit spoke only to the question of correspondence from plaintiff Ford with respect to claims in which Deputy Commissioner Veronica Madden was named. Affidavit of Katherine Gonzalez, Ex. A to Defendants' Memorandum. [Docket No. 50-1].

In order to facilitate resolution of the issue of exhaustion of administrative remedies, on April 20, 2011, the Court directed Defendants to file affidavit(s) from authorized prison personnel regarding the submission of grievances or letters (in any written form) by any of the Plaintiffs to the RSRC that touched upon the claims raised in the complaint, along with copies of each document submitted by Plaintiffs. [Docket No. 52]. Additionally, the Court ordered Defendants to file an affidavit with respect to any other grievances or letters submitted by Plaintiffs to any other prison staff or prison official with respect to matters raised in the complaint, along with copies of each document submitted by Plaintiffs. Id. The Court also ordered that the affidavit should address the exhibits submitted by Plaintiffs in support of their

argument that they had exhausted their claims.[1]  Id.

On May 27, 2011, Defendants filed a Memorandum of Law in Support of their Reply, which included affidavits from individuals responsible for addressing grievances or RSRC requests at correctional institutions that housed or are currently housing Plaintiffs.  [Docket No. 62].  Specifically, Defendants filed affidavits from the following individuals:

- Victoria O'Hearn, Director of Treatment, MCI-Cedar Junction (Ex. 2);
- Christopher Mitchell, Director of Program Services and Reentry and Chairperson of the Religious Services Review Committee (Ex. 3);
- Kimberly Kenney, Institutional Grievance Coordinator, MCI-Norfolk (Ex. 4);
- Christine Brockelman, Director of Treatment, MCI-Shirley (Ex. 5);
- Timothy Bariamis, Institutional Grievance Coordinator, MCI-Shirley (Ex. 6);
- Vicki Pineda, Paralegal Specialist, Souza Baranowski Correctional Center (Ex. 7);
- Pamela O'Dell, Institutional Grievance Coordinator, Souza Baranowski Correctional Center (Ex. 8);
- Robert E. Stork, Institutional Grievance Coordinator, MCI-Cedar Junction (Ex. 9);
- Christine Larkin, Director of Treatment, MCI-Concord (Ex. 10);
- Keith Scannell, Institutional Grievance Coordinator, MCI-Concord (Ex. 11);
- Jean LaHousse, Director of Treatment, Old Colony Correctional Center (Ex. 12); and
- Mark Fogaren, Institutional Grievance Coordinator, Old Colony Correctional Center (Ex. 13)

As detailed infra, and in contrast to the December 13, 2010 Mitchell affidavit, the later affidavits state that while some of the Plaintiffs have submitted grievance forms regarding Kingism, only plaintiff Ford has followed the correct procedure and submitted the required Inmate Services Religious Request Form.  See O'Hearn Aff., ¶ 14.

Plaintiffs filed a reply on June 14, 2011.  [Docket No. 66].  In their reply, Plaintiffs assert

---

[1] By motions dated February 22, 2011 and April 14, 2011, the Plaintiffs sought discovery on, inter alia, the exhaustion issue.  [Docket Nos. 45 and 51].  Because the April 20, 2011 order effectively compelled the Defendants to produce the material requested by Plaintiffs, the motions for discovery were denied.  [Docket No. 52].

that because they did not have a copy of Religious Services Handbook, they were unaware of the correct procedure and their grievances are sufficient to exhaust their claims.

**ANALYSIS**

I.  Standard of Review

Defendants have filed a motion to dismiss. In deciding a motion to dismiss, a court typically may not consider materials outside of the pleadings. Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990). Nevertheless, both parties have submitted materials outside the pleadings either on their own accord or in response to this Court's orders. Accordingly, on July 12, 2011, the Court provided notice to the parties that it intended to convert the motion with respect to the exhaustion issue to one for summary judgment and provided the parties twenty one days from the date of the Order to submit additional evidence on the exhaustion issue only.[2] [Docket No. 68]. Fed. R. Civ. P. 12(d); Wells Real Estate Investment Trust II, Inc. v. Chardon/Hato Rey Partnership, S.E., 615 F.3d 45, 51-52 (1st Cir. 2010); Nilsson v. Mass. Dep't. of Corr., No. 09-40019, 2011 U.S. Dist. LEXIS 33548, at *15 (D. Mass. March 30, 2011); Simpson v. Wrenn, No. 07-cv-265, 2008 U.S. Dist. LEXIS 32880, at *2 (D.N.H. April 18, 2008); see also Andrade v. Maloney, No. 02-10613, 2006 U.S. Dist. LEXIS 57827, at *8-9 (D. Mass. August 16, 2006) (deciding exhaustion issue under a summary judgment standard because the parties had the opportunity to submit materials to develop the record.).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and affidavits show that "there is no genuine dispute as to any material fact and

---

[2] Defendants did submit further materials that largely were not germane to the exhaustion issue, see, e.g. Docket No. 70, and the Court has not considered them in reaching its decision.

-7-

that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court views the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor. Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). Where, as here, the party moving for summary judgment bears the burden of proof on an issue, it cannot prevail unless "the evidence that he provides on that issue is conclusive." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998).

II.     PLRA

Section 1997e(a) of the PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA attempts to eliminate unwarranted interference by federal courts with the administration of prisons and affords corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Woodford v. Ngo, 548 U.S. 81, 93-4 (2006); Porter v. Nussle, 534 U.S. 516, 524-5 (2002). The PLRA was intended to also reduce the quantity and improve the quality of prisoner suits. Id.

The exhaustion of administrative remedies is mandatory and applies to any suit challenging prison conditions. Woodford, 548 U.S. at 85. A court cannot consider an unexhausted claim. Jones v. Bock, 549 U.S. 199, 219-20 (2007). The PLRA applies to any action based on Section 1983 or "any other federal law." 42 U.S.C. § 1997(e). Accordingly, it applies to Plaintiffs' claims under Section 1983, RLUIPA, and the U.S. Constitution. See 42

U.S.C. § 2000cc-2(e); Cutter v. Wilkinson, 544 U.S. 709, 723 n. 12.[3] A claim must be "exhausted" prior to filing suit. 42 U.S.C. § 1997(e). It is not enough that a prisoner has commenced the administrative process or commences the administrative process after a suit is filed. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

Exhaustion is an affirmative defense and accordingly Defendants bear the burden of establishing that Plaintiffs did not exhaust their administrative remedies. Jones, 549 U.S. at 216. A defendant is entitled to the dismissal of the claims against it if it can demonstrate a lack of exhaustion. Medina-Claudio, 292 F.3d at 36.

A. The Grievance Process

Exhaustion must be "proper" in that a prisoner must "complete the administrative review process in accordance with applicable procedural rules" that are "defined not by the PLRA, but by the prison grievance process itself." Woodford, 548 U.S. at 88; Jones, 549 U.S. at 218. Here, the Department of Corrections has promulgated regulations concerning the types of items prisoners may possess in their cells. See 103 Code Mass. Regs. § 403.00. According to the regulations, a prison should establish a list of approved religious articles and set forth a process by which prisoners may make requests to retain other articles in their cells. 103 Code Mass.

---

[3] The PLRA does not apply to Plaintiffs' claims under Article 2 of the Massachusetts Constitution. Nevertheless, a district court may decline to exercise supplemental jurisdiction over state law claims where federal claims fail at the pleading stage. See 28 U.S.C. § 1367(c)(3); Acosta v. United States Marshals Service, 445 F.3d 509, 515 (1st Cir. 2006); Cannarozzi v. Fiumara, 371 F.3d 1, 7 (1st Cir. 2004). Plaintiffs have only asserted supplemental jurisdiction for their state law claims. Complaint, p. 3. Indeed, there does not appear to be a basis for diversity jurisdiction as all of the parties are located in Massachusetts. Because, as described below, the federal claims are dismissed without prejudice, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses them without prejudice as well.

Regs. § 403.10(9). The regulations further provide for a Religious Services Review Committee to review such requests and to make recommendations to the Commissioner of Corrections for approval. Id.; see also 103 Code Mass. Regs. § 471.00 "Religious Programs and Services" (establishing religious programs and services).

The Commissioner has issued a Religious Services Handbook to serve as a "tool and reference source for prison administrators and inmates." Rasheed v. Commissioner of Correction, 446 Mass. 463, 475-477 (2006) (upholding Handbook as valid exercise of statutory and regulatory authority). The Handbook, which is available in the inmate library, includes a section outlining commonly accepted practices and items for the 17 faiths that the Department has recognized. See Defendants' Memorandum of Law in Support of their Reply, Ex. 2, Affidavit of Victoria O'Hearn ("O'Hearn Aff.") at Exhibit 1. [Docket No. 62-2]. Kingism, and items related to Kingism, are not listed in the Handbook. Id.

The Handbook sets out the process by which inmates can make specific requests for religious items and services that are not already permitted by or identified in the Handbook. Id., p. 6. The process is, in relevant part, as follows:

> 1. Inmates are required to submit a "Inmate Religious Services Request Form" ("IRSR") with all supporting documentation to the Superintendent's designee.
> 2. The IRSR is reviewed by the Superintendent's designee to ensure that it is complete and accurate.
> 3. The Superintendent will then forward his/her recommendation to the Religious Services Review Committee ("RSRC") utilizing a "Religious Services Request Form" ("RSRF"). The RSRC will consist of the Assistant Deputy Commissioner of the Southern Region, the Assistant Deputy Commissioner of the Northern

> Region, the Deputy Commissioner of Classification, Programs and Reentry, and the Director of Program Services.
>
> 4. The committee will review the IRSR and the RSRF and make a formal determination to the superintendent. The Handbook will then be amended accordingly. This review will be based on case law and commonly accepted practice and the Superintendent's recommendation.

Id.

In short, an inmate is required to submit a IRSR Form to the Superintendent in order to request that prison authorities permit him to have religious services and/or items that are not already listed in the Handbook. The submission of the IRSR Form initiates the process by which the RSRC considers the request – a grievance form is insufficient. Therefore, under the PLRA, Plaintiffs have not exhausted their claims and dismissal is warranted if each Plaintiff did not submit an IRSR form regarding Kingism before filing their complaint. As detailed more fully below, only Plaintiff Ford has done so, and even he did not complete the process prior to filing the instant complaint.

B.  Status of the Plaintiffs

The Court will discuss each Plaintiff's status in turn.

1.  Albert Ford

Mr. Ford submitted a timely Inmate Religious Services Request Form, on February 17, 2010. O'Hearn Aff., ¶ 14; Ex. 4. [Docket No. 62-2]. However, the corresponding Religious Services Request Form was not completed by prison officials as required by the Handbook, and accordingly was not forwarded to the RSRC for its consideration. Id. at ¶ 15. Defendants discovered this error while complying with the Court's April 20, 2011 order. Second Affidavit of Christopher Mitchell, ¶ 2. [Docket No. 62-10]. Prison officials are now processing plaintiff Ford's request. O'Hearn Aff., ¶ 15; Second Affidavit of Christopher Mitchell, ¶ 3. Because Mr.

Ford's request has not completed the administrative review process,[4] his claim is therefore unexhausted and must be dismissed. Medina-Claudio, 292 F.3d at 36.

### 2. Christopher Santos

Mr. Santos submitted two grievance forms regarding his inability to practice Kingism (Nos. 33062, 45361), and one grievance regarding his classification as being part of a Security Threat Group (No. 46459). Affidavit of Kimberly Kenney, ¶ 4; Affidavit of Robert Stork, ¶ 11-13; Plaintiff's Opposition to Defendants' Motion to Dismiss, Ex. C. Mr. Santos was informed after each grievance submission regarding his religion that the proper avenue for his complaint was to submit a request to the RSRC. Id. Mr. Santos eventually filed an Inmate Religious Request form on May 13, 2011, which is currently being processed. O'Hearn Aff., ¶ 16; Second Affidavit of Christopher Mitchell, ¶ 9. Because Mr. Santos filed his request after initiating litigation and that request is currently being processed, his claim is unexhausted and must be dismissed.

### 3. Joel Vasquez

Mr. Vasquez filed a grievance (No. 45794) regarding Kingism on March 12, 2010 and was instructed that he needed to complete an Inmate Religious Request form. Affidavit of Robert Stork, ¶ 8; Plaintiff's Opposition to Defendants' Motion to Dismiss, Ex. C. As of May 16, 2011, Mr. Vasquez had not submitted this form. O'Hearn Aff., ¶ 18. Accordingly, Mr. Vasquez's claim is unexhausted and must be dismissed.

---

[4] The DOC confesses error with respect to the processing of Ford's paperwork and suggests, therefore, that his claim need not be dismissed. However, a claim should typically be exhausted before it is subject to review in federal court. Medina-Claudio, 292 F.3d at 36. Accordingly, Ford's claims are dismissed without prejudice.

### 4. Domingos Coelho

Mr. Coelho filed three grievances regarding Kingism (Nos. 45185, 46564, 51882) on February 2, 2010, April 28, 2010, and March 21, 2011. Affidavit of Pamela O'Dell, ¶ 4, 6; Affidavit of Robert Stork, ¶ 9-10; Plaintiff's Opposition to Defendants' Motion to Dismiss, Ex. E. The grievances were denied and Mr. Coelho was informed that he must submit an Inmate Religious Services Request form and was provided with the form. Id. As of May 16, 2011, Mr. Coelho had not submitted this form. Id. Accordingly, Mr. Coelho's claim is unexhausted and must be dismissed.

### 5. Carlos Irizarry

Mr. Irizarry has never filed a grievance or an Inmate Religious Request Form at any of the three facilities he has resided in. O'Hearn Aff., ¶ 18; Affidavit of Kimberly Kenny, ¶ 4; Affidavit of Christine Larkin, ¶ 3; Affidavit of Keith Scannell, ¶ 4; Affidavit of Robert Stork, ¶ 6. Accordingly, Mr. Irizarry's claim is unexhausted and must be dismissed.

### 6. Aurelio Duclerc

Mr. Duclerc has never filed a grievance or an Inmate Religious Request Form at any of the three facilities in which he has resided. Affidavit of Pamela O'Dell, ¶ 4; Affidavit of Vicki Pineda, ¶ 3-4. Accordingly, Mr. Duclerc's claim is unexhausted and must be dismissed.

## **CONCLUSION**

As stated above, with the exception of Plaintiff Ford, all of the plaintiffs have failed to file an Inmate Religious Request Form regarding Kingism prior to filing their complaint and therefore have not exhausted their administrative remedies. Plaintiff Ford's Inmate Religious Request Form is currently being processed and therefore his claims are also unexhausted. For the foregoing

reasons, this Court GRANTS Defendants' motion to dismiss based on a failure to exhaust administrative remedies without prejudice. This Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and accordingly dismisses these claims without prejudice.

    /s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge